IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CR. No. 2:11cr39-WHA |
| | ) | (WO) |
| BRADLEY H. PEMBERTON | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This case is before the court on a Motion for Judgment of Acquittal (Doc. #64) and Motion to Set Aside Judgment and Motion for a New Trial (Doc. #65).

On June 29, 2011, Defendant Bradley H. Pemberton ("Pemberton") was convicted of (1) wire fraud, pursuant to 18 U.S.C. § 1343; and (2) aggravated identity theft, pursuant to 18 U.S.C. § 1028A(a)(1).  During the trial, the Government alleged that, on December 2, 2008, Pemberton applied for a Discover credit card using his own address, but the name, social security number, and date of birth of another individual named Bradley N. Pemberton ("Bradley N.").  The Government further alleged that, during the relevant times of this case, Pemberton worked as a sergeant with the Montgomery Police Department, and that Pemberton obtained Bradley N.'s identifying information using the Montgomery Police Department's Law Enforcement Tactical System ("LETS") on December 2, 2008.  At trial, the Government not only introduced evidence of the charged conduct of December 2, 2008, but also evidence that Pemberton applied for an American Express card, after accessing LETS, using Bradley N.'s identifying information and Pemberton's own address.

In his Motions, Pemberton requests a judgment of acquittal or, in the alternative, a new trial.  For reasons to be discussed, Pemberton's Motions are due to be DENIED.

## II. LEGAL STANDARDS

A.     Motion for Judgment of Acquittal

A defendant carries a heavy burden in challenging the sufficiency of evidence supporting a conviction. *United States v. McCarrick*, 294 F.3d 1286, 1290 (11th Cir. 2002). The court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Hernandez*, 433 F.3d 1328, 1335 (11th Cir. 2005).

The court views the evidence in the light most favorable to the Government, making all inferences and credibility determinations in the Government's favor. *United States v. Majors*, 196 F.3d 1206, 1210 (11th Cir. 1999). Accepting all reasonable inferences from the evidence which support the verdict, the court will uphold the convictions if a reasonable fact-finder could have reached a conclusion of guilt beyond a reasonable doubt. *United States v. Lopez*, 985 F.2d 520, 524 (11th Cir.1993). It is not necessary for the Government to disprove every reasonable hypothesis of innocence, as a jury is "free to choose among reasonable constructions of the evidence." *United States v. Jones*, 913 F.2d 1552, 1557 (11th Cir. 1990).

B.     Motion for New Trial

Rule 33 states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). It is the defendant's burden to justify a motion for new trial. *United States v. Campa*, 459 F.3d 1121, 1151 (11th Cir. 2006).

### III.  DISCUSSION

A.  **Motion for Judgment of Acquittal and Motion for New Trial due to Weight of Evidence**

Pemberton argues that this court must grant a judgment of acquittal.  In the alternative, Pemberton argues that, based on the weight of the evidence, he is entitled to a new trial. Pemberton proffers three major reasons in support.  The court finds Pemberton's arguments to be without merit.

First, Pemberton argues that the IP address that was used to apply for the Discover card could only establish that the application for the Discover Card came from a Brighthouse Communications customer in Elmore County, and could not be narrowed down to Pemberton's house.

Second, Pemberton points to evidence that his wife, rather than he, may have committed the crime.  Pemberton notes that (1) his wife, or some other person, could have logged on to LETS and applied for the Discover Card, because Pemberton left the password to his LETS account on his computer desk, and any potential changes to his password were predictable; and (2) Pemberton wrote a letter to American Express suggesting that his wife may have opened a Discover Card in his name, and also testified that he thought his wife opened the application.

Third, Pemberton asserts that he presented strong evidence that he was not at his house at the time of the crime, and the prosecution failed to prove this theory.  Specifically, (1) Pemberton had a Corner Store gas receipt, from a gas station located far away from his home, dated on Tuesday, December 2, 2008 at 4:07 p.m., just minutes before the application for the Discover Card; (2) Pemberton presented evidence that he regularly played cards at the address of James

3

Harwick ("Harwick"), who lived near the Corner Store; and (3) Pemberton presented evidence of a canceled check given to Harwick on December 2. In Pemberton's opinion, the Government failed to rebut this evidence, as it merely presented speculation by special agent Marcus Shumack ("Shumack"). To rebut any suspicion from the fact that Pemberton happened to find this receipt long after the date of the charged crime, Pemberton asserted that he kept receipts for tax purposes, and that had he fabricated this receipt, he would have brought it up before he had been interrogated regarding the charged conduct and subsequently lost his job.

In sum, Pemberton's arguments are based on the same alibi theory that he advanced at trial. Pemberton argues that, based on the evidence he presented, he is due a judgment of acquittal or, in the alternative, a new trial, on this alibi theory.

Pemberton is not due a judgment of acquittal, because a reasonable jury could--and did--disbelieve Pemberton's alibi theory. Pemberton's argument regarding his IP address is overstated. While the IP address alone did not pinpoint Pemberton's house as the location of the Discover card application, that same IP address also accessed LETS, using Pemberton's user name and password, just minutes before submitting the Discover card application. Additionally, the Discover card application was applied for using Pemberton's home address. A reasonable jury could conclude this meant the application was submitted from Pemberton's house, by Pemberton.

Pemberton's next argument, that the applications could have been sent by his wife, is not supported by any evidence except for Pemberton's own speculation and writing. The only evidence Pemberton presented regarding this theory was (1) his own speculative testimony that maybe his wife, due to marital strife, decided to open credit card accounts in Pemberton's name;

4

and (2) a letter he wrote to American Express in which he said that his wife opened the Discover Card in his name.  A reasonable jury could find this evidence unbelievable and a coverup for Pemberton's own actions.  For example, when asked by the special agents during his interrogation whether someone else could have committed the crime, Pemberton did not name anyone.

      Pemberton's third argument, regarding the gas receipt and card game, could similarly be disbelieved by a reasonable jury.  For example, a reasonable jury could find it was unbelievable for Pemberton to have kept the receipt for tax purposes because he admitted that the receipt was not deductible.  Additionally, Shumack noted that it was easy for him to have prior receipts printed out from the cash register.  There was also evidence that it would have been easy to pick up receipts out of the trash and garbage can.  Moreover, although Pemberton presented a cashed check that he paid one of his friends for playing cards on the date of the charged conduct, that check did not indicate what time Pemberton gave the check to his friend, and additionally, Pemberton could have written an incorrect date on the check.  While Pemberton presented evidence that he and his friends played cards weekly on Sundays, at approximately the same time as the charged conduct, the charged conduct actually occurred on a Tuesday.  There was also evidence that the card players sometimes showed up late to the card game.

      All of the above, coupled with extensive additional evidence presented by the Government, including the fact that Pemberton received credit cards in the mail *after* filing for bankruptcy, the fact that Pemberton had previously accessed Bradley N.'s name on LETS and another system called AS400 on multiple occasions, and the fact that Pemberton had used an American Express card with Bradley N.'s name in the past, are more than enough for a

reasonable jury to disbelieve Pemberton's alibi theory and find Pemberton guilty beyond a reasonable doubt for the charged crimes.

For similar reasons, Pemberton's request for a new trial on weight of the evidence grounds is due to be denied. If a motion for a new trial is based on the weight of the evidence, this court "need not view the evidence in the light most favorable to the verdict," but rather, "may weigh the evidence and consider the credibility of the witnesses." *United States v. Martinez*, 763 F.2d 1297, 1312 (11th Cir. 1985). However, motions for new trials based on this ground are "not favored," and granted only in exceptional cases. *Id.*

Such a motion may be granted if, "despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* (quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir. 1980)). In making this determination, the court should consider whether the credibility of the Government's witnesses was impeached, and whether the Government's case "was marked by uncertainties and discrepancies." *Id.*[1]

For the reasons stated above, and even when considering the credibility of witnesses on its own, this court concludes that the Government's case was not "marked by uncertainties and discrepancies." Additionally, Pemberton did not significantly impeach the credibility of the Government's witnesses. For example, Pemberton pointed out that Shumack failed to seize Pemberton's computer while investigating, which could have cleared Pemberton's name. But the failure to seize Pemberton's computer may have simply been due to the fact that the Government

---

[1]The Rule 29 and Rule 33 standards are not identical, though a case in which Rule 29 does not warrant a judgment of acquittal yet Rule 33 warrants a new trial based on weight of the evidence "will be rare." *See Butcher v. United States*, 368 F.3d 1290, 1297 n.4 (11th Cir. 2004).

does not have infinite resources to investigate crimes, and thus, cannot investigate every crime to the fullest extent.  Pemberton also tried to impeach the Government's witnesses by complaining that Discover, after initially stating that it could not supply an IP address with respect to the Discover Card application in this case, ultimately supplied the IP address to the Government and Pemberton just four days before trial.  However, the court concludes that this did not mean that the Government's witnesses were lying.  Jerry Brown, Discover's custodian of records, explained that his department at Discover did not keep IP addresses on file past a certain date.  However, Brown later discovered, four days before trial, that another department at Discover kept the IP addresses for a longer time period.  Shumack corroborated this testimony.[2]  Weighing the credibility of the Government's witnesses, as this court may do in evaluating a motion for a new trial, the court is not convinced that their credibility has been seriously impeached.

In sum, Pemberton has failed to meet his high burden for this court to grant him a judgment of acquittal or a new trial on the basis of weight of the evidence.

B.   **Motion for a New Trial on the Basis of Admitting Prior Credit Card Applications**

Pemberton argues that he is due a new trial because this court erred in its Motion in Limine, ordering that the Government could present evidence of prior credit card applications made by Pemberton.  At trial, the only prior credit card application that the Government presented was an American Express application.  For the same reasons set forth in this court's prior Order denying the Motion in Limine (Doc. #44), this court denies Pemberton's request for a

---

[2]The court does not attempt to list every instance in which Pemberton attempted to impeach Government witnesses.

new trial on the basis that those credit card applications were erroneously admitted. Specifically: (1) the evidence was relevant to an issue other than Pemberton's character; (2) the Government presented sufficient proof at trial for the jury to find by a preponderance of the evidence that Pemberton submitted the American Express application; and (3) the probative value of that application was not substantially outweighed by undue prejudice, and otherwise satisfied Rule 403. *See* Doc. #44 at 2.

C.  **Motion for a New Trial Due to the fact that a Grant Juror Knew Bradley N. and his Family**

Pemberton next argues that he is due a new trial because one of the grand jurors in this case knew the victim, Bradley N., and his family.

Pemberton argues that he has a right to an unbiased grand jury, pursuant to the Fifth Amendment's due process clause. Pemberton cites *Beck v. Washington*, 369 U.S. 541 (1962), and supplies the court with the following quotation: "it was the policy of the legislature to preserve the right to have an unbiased and unprejudiced jury and grand jury." *Id.* at 559 (Black, J., dissenting) (quoting *Washington v. Superior Court of Whatcom Cnty.*, 144 P. 32, 32 (Wash. 1914)). However, although not identified as being from a dissenting opinion by Pemberton, the quotation is from Justice Black's dissent in that case, and the text Justice Black quotes is from a state court case from Washington. The quote merely explains that, in the state of Washington, grand juries must be unbiased, because the Washington legislature has so declared. In fact, the majority opinion in *Beck* explicitly refused to decide the question of whether the Constitution mandated that states furnish an unbiased grand jury. *Id.* at 546. In other words, *Beck* is

obviously irrelevant to this case, and does not establish that Pemberton is entitled to relief in any respect.

A grand jury's indictment is not invalid merely due to bias. In *United States v. Jennings*, a defendant moved to dismiss the indictment against him, because one of the grand jurors was friends with a victim of the defendant's crime. 991 F.2d 725, 728 (11th Cir. 1993). In that case, the Eleventh Circuit held that dismissal was improper on that basis, though it did not express a clear standard for why dismissal was improper. *See id.* at 728-29. First, the court cited to a prior case, *Porter v. Wainwright*, 805 F.2d 930 (11th Cir. 1986), in which it held, under the harmless error rule, that the defendant, who was subsequently convicted by a petit jury, could not challenge the grand jury's indictment on the basis that the grand juror and victim were friends. *Id.* at 728  It explained the reasoning of *Porter* as follows: (1) an indictment may not be dismissed for harmless error; (2) to indict, a grand jury need only find probable cause; and (3) by contrast, to convict, a petit jury, which must be unbiased, must find probable cause *and* guilt. *Id.* Thus, due to the petit jury's choice to convict (which, by definition, requires a finding of probable cause), any potential error caused by the friendship of the grand juror and victim was harmless. *Id.*

However, the Eleventh Circuit in *Jennings* noted that the Supreme Court in *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988) may have cast doubt on *Porter*. *Id.* at 729. In *Nova Scotia*, the Court explained that dismissal of an indictment is appropriate only if "'it is established that the violation substantially influenced the grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Id.* (quoting *Bank of Nova Scotia*, 487 U.S. at 256 (citation omitted)).

9

Although the Eleventh Circuit in *Jennings* did not decide which test applied when a grand jury is challenged because one of the grand jurors is friends with the victim, even if the *Nova Scotia* test applies in this case, Pemberton must *establish* that the *Nova Scotia* test is met. In this motion, Pemberton has merely suggested that the friendship of the grand juror caused bias, which led to an improper indictment. Such is not enough, under either standard discussed in *Jennings*.

Pemberton also argues, both in the instant Motion and his prior Motion to Dismiss the Indictment, that Shumack's testimony before the grand jury involved assumptions, opinion, speculation, and hearsay information, and that Shumack's "status as a Secret Service Agent certainly influenced the Grand Jury to indict." However, grand jury proceedings are not subject to the Rules of Evidence that must be observed during a trial before a petit jury. *See, e.g.*, *Costello*, 350 U.S. at 364; Federal Practice & Procedure § 104. Accordingly, Pemberton's arguments on this point are meritless.

In sum, Pemberton's arguments regarding his prior Motion to Dismiss the Indictment are meritless, and a new trial is due to be denied with respect to those arguments. Moreover, to the extent that Pemberton asserts that it was error for this court to deny his prior Motion to Dismiss the Indictment as untimely, the court disagrees for the reasons set out in its prior ruling, but also finds that the above analysis shows that any potential error would be harmless. Fed. R. Crim. P. 52(a).


**D.    Motion for a New Trial Due to the Jury's Brief Consideration of the Evidence**

Pemberton next complains that the jury returned a verdict after only approximately one hour of deliberation. He emphasizes that this case involved circumstantial evidence, and argues

that the jury must not have actually considered the evidence or followed the court's instructions, but rather, "could not wait to find Mr. Pemberton guilty for being, what they must have thought was, a police officer gone bad."

>   Binding precedent precludes this argument:
>
>   After deliberating fourteen minutes, the jury returned a verdict in favor of the defendant. This appeal is based solely on the ground that the evidence does not support the verdict: the short deliberate period of fourteen minutes is proof in itself, so appellant argues, that the jury did not properly consider the case and could not have arrived at a reasoned conclusion. There is no merit to the appellant's argument. We cannot hold an hour-glass over a jury. If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial. Here the evidence amply supports the verdict.

*Marx v. Hartford Acc. & Indem. Co.*, 321 F.2d 70, 71 (5th Cir. 1963);[3] *see also United States v. Rafferty*, 296 F. App'x 788, 797 (11th Cir. 2008) (denying a motion for a new trial when jury deliberations lasted only two hours) (citing *United States v. Lawrence*, 405 F.3d 888, 904-05 n. 11 (10th Cir. 2005)).

As previously discussed, the evidence presented in this case was sufficient to convict Pemberton. Accordingly, the motion for a new trial on the basis that the jury did not deliberate for long enough is due to be denied.

### E.     Motion for a New Trial on the Basis of Excluded Evidence

Pemberton next argues that this court erred by not allowing him to present his mother's testimony at trial. Pemberton states that his mother would have testified that, on the evening of

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit issued before October 1, 1981.

11

July 15, 2008, Pemberton was at home painting his new house, at the same time a credit card application was filed with Advanta. Pemberton argues that this evidence is relevant, because it would have refuted any suggestion that Pemberton applied for that Advanta card.

When Pemberton attempted to introduce this information, the Government objected, on the ground that Pemberton was attempting to rebut his own evidence. The Government pointed out that Pemberton, not the Government, introduced the Advanta card application into evidence. In fact, the Government stated, in open court, that it did not contend that Pemberton applied for the Advanta card.[4] Thus, the court sustained the objection.

In the instant Motion, Pemberton asserts that, although the Government did not introduce the Advanta card application into evidence, it referred to the Advanta card application by presenting a video of Pemberton being interrogated, in which Pemberton was accused of using LETS as well as the AS400 system to obtain Bradley N.'s identifying information and apply for credit cards, including accusations that he did so from the Montgomery Police Station using the AS400 system. Pemberton asserts that, because the Advanta card application was made on July 15, 2008, his mother's testimony would have refuted any contention that he applied for an Advanta card on July 15, 2008, because he was at home, and not at the Montgomery Police Station.

The court concludes, for the same reasons it did at trial, that this evidence was inadmissible. Simply put, Pemberton sought to present an alibi to rebut an argument the

---

[4]Upon objecting to the Defendant's introduction of Pemberton's mother's testimony, the Government stated, without asking for a sidebar, that it did not contend "anything" about the Advanta application.

Government did not assert. Additionally, by presenting this alibi, Pemberton would potentially confuse the issues of this case by attempting to focus the jury's attention on an extraneous issue.

Therefore, to the extent this evidence could be relevant under Rule 402, it is inadmissible pursuant to Rule 403, because its "probative value" is very slim, and is substantially outweighed by, among other concerns, "confusion of the issues," and "misleading the jury." *See* Fed. R. Evid. 403.[5]

## IV.  CONCLUSION

For the foregoing reasons, the Motion for Judgment of Acquittal (Doc. #64) and Motion to Set Aside Judgment and Motion for a New Trial (Doc. #65) are DENIED.

Done this 1st day of August, 2011

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE

---

[5] The court notes that Pemberton was able to produce evidence rebutting his use of the AS400 system at trial, thus reducing the probative value of his mother's testimony further. *See United States v. Beechum*, 582 F.2d 898, 914 (5th Cir. 1978) ("It is the incremental probity of the evidence that is to be balanced . . . .").